Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1482 | **DATE** | 10/15/2001 |
| **CASE TITLE** | JAMES RIVERA vs. ANTHONY PRINCIPI | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The motion for summary judgment [18-1] is granted. Judgment is entered for defendant Anthony Principi, Secretary of Veterans Affairs and against plaintiff James Rivera. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 17 2001 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | 24 |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | 10/15/2001 date mailed notice | |
| SB | courtroom deputy's initials | 01 OCT 16 PM 6:46 Date/time received in central Clerk's Office | CB mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES RIVERA )
)
Plaintiff, ) No. 01 C 1482
)
v. ) Suzanne B. Conlon, Judge
)
ANTHONY PRINCIPI, )
SECRETARY OF VETERANS AFFAIRS ) **DOCKETED**
)
Defendant. ) OCT 1 7 2001

## MEMORANDUM OPINION AND ORDER

James Rivera sues his former employer Department of Veterans Affairs ("the VA") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* for national origin discrimination (Counts I - III), disability discrimination (Count IV), and retaliation (Counts V and VI). The VA moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## BACKGROUND

**I. Rule 56.1 Responses**

After the moving party has filed its Rule 56.1 statement of material facts, the nonmoving party must file a response to each numbered paragraph in the Rule 56.1 statement. In cases of disagreement, the nonmoving party must refer to specific evidence in the record supporting that disagreement. *Cent. States Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1017 (7th Cir. 2001); *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 n.3 (7th Cir. 2000); Local Rule 56.1. A response that does not deny the allegations with citations to supporting evidence will be deemed

1

an admission. *Jupiter Aluminum Corp.*, 225 F.3d at 871. Moreover, the evidence relied upon must be admissible at trial. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

Rivera's Rule 56.1 responses to the VA's statement of material facts include denials without citations to supporting evidence, unresponsive denials, and responses asserting that Rivera "has insufficient information to admit or deny." In addition, Rivera fails to respond to some of the numbered paragraphs. These responses do not comply with Rule 56.1. Accordingly, ¶¶ 10-15, 17, 19, 22, 25, 27, 28, 30, 31, 33, 41-45, 47, 48, 59, 60, 64, 65, and 70-74 are treated as admissions to the extent they fail to comply with Rule 56.1.

## II. The Facts

All facts are undisputed unless otherwise noted. James Rivera is of Puerto Rican descent. Until June 2001, Rivera was employed by the VA as a medical supply technician, level GS-5, in the Supply Processing and Distribution unit ("SPD") at its Chicago Lakeside Medical Center ("Lakeside"). The job duties of a medical supply technician include: collecting used medical equipment; decontaminating, sterilizing and maintaining medical equipment; preparing trays of medical instruments for various wards in the hospital; filling medical personnel's requests for medical items; wrapping instruments and medical supplies; and stocking medical supply closets.

Rivera claims the VA discriminated against him on the basis of national origin by failing to provide him with cluster training and certification training. He believes that such training would have increased his chances of promotion. He contends that except for a newly hired employee, he was the only SPD employee who was not trained. Rivera did receive some certification training in the fall of 1997, but was never given cluster training. Cluster training focuses on decontamination and sterilization techniques. The VA expected that all SPD employees would eventually complete

cluster training. However, completion of certification or cluster training did not enhance a medical supply technician's promotion chances.

Ernestine Collins-Scott was responsible for selecting the SPD employees who attended cluster training. The VA only allowed her to send two employees per year to training, so she generally selected one employee from the VA's Lakeside facility and one from the Westside facility. Because training focused on decontamination and sterilization techniques, Collins-Scott primarily selected employees who performed that type of work. Starting in 1995, after he was stuck by a needle, Rivera did not perform decontamination and sterilization work. Thus, Collins-Scott did not place a priority in sending him to cluster training. However, she did intend on eventually sending him to training. The only other employee who did not attend cluster training was Kevin Schab, a white medical supply technician at Lakeside. However, Schab was offered training.

Rivera claims he was offered overtime work on March 15, 1998, but the offer was rescinded. He alleges Dollie Booth, an African-American medical supply technician, worked the overtime hours that were offered to him. However, contrary to Rivera's claims, no one worked overtime on March 15, 1998. Rivera also claims that since March 15, 1998, he has not been offered overtime work whereas two African-American employees, Baron Robertson and Michael Lyda, have worked overtime on numerous occasions. When Robertson and Lyda worked overtime, they moved heavy equipment. Due to a knee injury, Rivera could not perform heavy lifting. Thus, he was not offered this work. In addition, Rivera did work some overtime hours, just not as often as Robertson and Lyda.

In March 1998, the lead supply technician, Jerry Phillips, assigned Rivera to work at the Adam Benjamin, Jr., Outpatient Clinic, a VA facility in Crown Point, Indiana ("the clinic").

3

Rivera's job title, duties, and salary did not change as a result of this assignment. Moreover, working at the clinic did not increase Rivera's chances of promotion. Rivera alleges that when Phillips assigned him to the clinic, Phillips told him he would be trained to order supplies, which Rivera believed would be a promotion. Rivera based this assumption on the fact that the previous supply technician at the clinic, Sharon Hicks, was at a higher GS level than him. However, Hicks was at a higher GS level because she was a computer operator, not a medical supply technician. Moreover, Hicks' training in ordering supplies was unrelated to the SPD. Rather, she was trained to order supplies in 1986 when she was secretary to the Chief of Acquisition and Material Management. No medical supply technicians in the SPD unit were trained to order supplies. Training in ordering supplies would not have increased Rivera's chances of promotion. Collins-Scott eventually removed Hicks from the clinic because she received complaints from the clinic staff regarding his work. According to Rivera, he was replaced because of his national origin.

In December 1999, Rivera requested a light duty position with the VA to accommodate his partially disabled right knee. As part of his request, Rivera submitted notes from his physician, Scott Rubinstein, indicating Rivera should consider a sedentary job and not lift more than ten pounds. In order to accommodate his request, Collins-Scott prepared a letter setting forth the information the VA needed from Rivera's physician. Rivera refused to accept the letter from Collins-Scott, so she had the letter placed in his locker where he later found it. On January 3, 2000, Collins-Scott and a VA employee relations specialist met with Rivera regarding his request for a light duty position, but Rivera would not answer any of their questions. At the meeting, Collins-Scott gave Rivera another letter and form for his physician to complete regarding his physical limitations and prognosis.

In late January 2000, Rivera gave Collins-Scott another statement from his physician

4

indicating that he should not lift more than ten pounds and should do sedentary work. In April 2000, Collins-Scott repeated her request for Rivera to have his physician complete the form regarding his physical limitations. Because Rivera never submitted the VA's forms, Collins-Scott did not grant his request. Although Rivera does not claim to have submitted the forms to his physician or the VA, he claims that he complied with all of Collins-Scott's requests.

Rivera filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). Rivera claims the VA retaliated against him for complaining to the EEOC. Specifically, he asserts that in August 2000, Collins-Scott interfered with his opportunity to be promoted to a GS-7 level position. However, Rivera did not receive the promotion because a prerequisite for the GS-7 level position was at least one year of experience at the GS-6 level, which Rivera lacked (he was a GS-5). Moreover, Collins-Scott was unaware that Rivera had applied for the GS-7 position.

In June 2000, Rivera was appointed to the position of Hispanic Manager of the VA's Special Emphasis program. This was a collateral position, meaning that it was in addition to, not in place of, his normal job duties. Holding the position would not have assisted Rivera in promotion. In December 2000, the Director of the VA Chicago, Richard Citron, removed Rivera from the position. Rivera claims his removal was in retaliation for his EEOC complaint. A condition of Rivera's appointment to Hispanic Manager was performance of his regular job duties. Because Rivera was not performing his supply duties, Collins-Scott complained to Citron. However, Rivera claims to have never failed to perform his restocking duties. Citron believed Rivera was an ineffective Special Programs Manager because Rivera failed to follow proper administrative procedures and possessed poor communication skills. Rivera denies failing to follow procedures or that he had poor communication skills. Based on complaints regarding Rivera's work and Citron's dissatisfaction

5

with Rivera's performance, Citron removed Rivera as Hispanic Manager. In addition to Rivera, Citron replaced several of the Special Emphasis managers in an effort to make the program more visible and effective.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. Nat'l Human Res. Comm., Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The summary judgment standard is applied with special scrutiny to employment discrimination cases because the outcome often depends on determinations of credibility and intent. *Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 692 (7th Cir. 2000).

### II. National Origin Discrimination Claims

There are two accepted ways of defeating an employer's motion for summary judgment in a Title VII case. A plaintiff may either offer direct evidence of the employer's impermissible

6

employment actions, such as "I did not promote you because of your national origin," or the plaintiff may use the indirect burden-shifting framework from *McDonnell Dougals Corp. v. Green,* 411 U.S. 792 (1973). *Hasham v. Cal. State Board of Equalization,* 200 F.3d 1035, 1043-44 (7th Cir. 2000); *Pafford v. Herman,* 148 F.3d 658, 665 (7th Cir. 1998). Under the indirect approach, a plaintiff can raise an inference of discrimination by establishing a *prima facie* case. If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. If the employer meets this burden, the burden shifts back to the plaintiff who must produce "evidence that would, if believed by a trier of fact, show that the true reason for the employment action was discriminatory." *Pafford,* 148 F.3d at 665 (citation omitted). Because Rivera does not present any direct evidence of discrimination, the court will apply the indirect burden-shifting framework.

### A. Failure to Train

Rivera's first claim is that he was denied training because of his national origin. To make out a *prima facie* case for failure to train, Rivera must show: (1) that he is a member of a protected group; (2) that the VA provided training to its employees; (3) that he was eligible for training; and (4) that he was not provided training under circumstances giving rise to an inference of discrimination, i.e., that he was denied training given to other similarly situated employees who were not members of the protected group. *Id.* at 667. It is irrelevant whether the training would have increased Rivera's chances of promotion. *Id.*

Rivera cannot establish a *prima facie* case because he cannot show that he was denied training under circumstances giving rise to an inference of discrimination. There are two types of training at issue, certification and cluster training. In 1997, Rivera received certification training,

7

but did not complete training due to VA budgetary concerns. In addition to Rivera, no other VA employees completed training. Therefore, Rivera cannot show he was denied certification training that was given to other similarly situated employees.

Next, Rivera contends he was denied cluster training because of his national origin. Cluster training focuses on sterilization and decontamination techniques. After Rivera was stuck with a needle in 1995, he did not perform decontamination and sterilization work. The VA only sends two SPD employees per year to cluster training. Because Rivera did not decontaminate and sterilize equipment, he was of low priority for this training. However, the VA intended to eventually send him to training. Because Rivera did not perform this type of work, he was not similarly situated to other employees who were sent to training ahead of him. However, Rivera claims he was similarly situated to Dolly Booth, an SPD employee who has been trained but does not perform decontamination and sterilization work. Rivera asserts that she went through training at some point in the past, but at the present time she does not perform this type of work. Rivera fails to produce evidence that Booth did not perform this type of work when she was sent to training. Therefore, he has not established she was similarly situated.

Nevertheless, even if he could establish a *prima facie* case, Rivera fails to produce evidence that the VA's legitimate reason for the employment decision was pretextual for intentional discrimination. The VA's legitimate, nondiscriminatory reason for not sending Rivera to cluster training was that he did not perform the type of work that was the focus of the training. Because the VA has offered a legitimate reason for the action, Rivera must establish by a preponderance of the evidence that the VA's reason was pretextual for intentional discrimination. *Hasham,* 200 F.3d at 1044-45 (pretext is a lie or phony reason). Rivera fails to offer evidence showing the VA's

8

legitimate reason for its action was pretextual. *See Patel v. Allstate Ins. Co.,* 105 F.3d 365, 372-73 (7th Cir. 1997) (employee failed to show pretext where employer denied her computer training because she could not type). Thus, summary judgment must be granted on Rivera's national origin discrimination claim.

### B. Transfer from the Clinic

Rivera next claims he was transferred from the clinic because of his national origin. Not every action that makes an employee unhappy is actionable. For an employment decision to be actionable, it must constitute a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Bell v. EPA,* 232 F.3d 546, 555 (7th Cir. 2000) (quoting *Burlington Indus. v. Ellerth,* 524 U.S. 742, 761 (1998)). Rivera's title, salary, promotion opportunities and duties did not change as a result of his transfer from the clinic. Therefore, his transfer did not constitute an actionable employment decision.

Alternatively, even if Rivera could establish an actionable employment decision, he fails to rebut the VA's legitimate reason for the decision. The VA removed Rivera from the clinic because of complaints from clinic staff that Rivera failed to properly stock the supplies and did not come to work on his scheduled days. Rivera claims he performed his duties and never missed work. However, Rivera's self-serving affidavit is not enough to create a genuine issue of material fact as to pretext. *Olsen v. Marshall & Ilsley Corp.,* No. 00-3840, 2001 WL 1117297, at *4 (7th Cir. Sept. 25, 2001) (employee's perception of his own performance did not create genuine issue of material fact as to pretext). In order to show pretext, Rivera must show the VA's reason for its action was a lie, not that the VA incorrectly assessed his abilities. *Id.* "And without proof of a lie, no inference

9

of discriminatory motive can be drawn." *Id.* Accordingly, summary judgment must be granted on Rivera's national origin discrimination claim.

### C. Denial of Overtime Hours

Rivera claims the VA denied him overtime hours because of his national origin while at the same time providing overtime hours to non-Puerto Rican employees. However, Rivera has worked some overtime hours, but not as often as Baron Roberson and Michael Lyda, who are both African-American. When Roberson and Lyda worked overtime, they moved heavy equipment. The VA claims that Rivera was not given this work because he could not and would not lift heavy objects. Thus, the VA has provided a legitimate, nondiscriminatory reason for its decisions. Rivera does not offer any evidence challenging the VA's reason as pretextual. Accordingly, summary judgment must be granted on Rivera's national origin discrimination claim. *See Patel,* 105 F.3d at 374 (affirming summary judgment where employee denied overtime offered no evidence to support an inference decision was discriminatory).

## III. Disability Discrimination Claim

Rivera alleges the VA violated the Rehabilitation Act of 1973 by failing to reasonably accommodate his partial disability.[1] To establish a claim for failure to accommodate, Rivera must show: (1) that he was a disabled person as defined by the statute; (2) that the VA knew about his disability; and (3) that he was a qualified individual who, with or without reasonable accommodation, could perform the essential functions of a medical supply technician. *Winfrey v.*

---

[1] Americans with Disabilities Act standards are to be applied to determine whether the Rehabilitation Act has been violated. 29 U.S.C. § 794(d). Thus, cases decided under both the ADA and Rehabilitation Act are applied in determining whether there has been a violation. *Silk v. City of Chicago,* 194 F.3d 788, 798 n.7 (7th Cir. 1999).

*City of Chicago*, 259 F.3d 610, 614 (7th Cir. 2001). The only issue in this case is whether Rivera was a qualified individual with a disability.

A two-step test is applied to determine if someone is a qualified individual with a disability. First, the court determines if the person satisfies the prerequisites for the position, *e.g.*, educational background and skills. If the individual does, the court must determine whether the individual can perform the essential functions of the position held, with or without reasonable accommodation. *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001). Rivera's background for the position of medical supply technician is not at issue; thus, the issue is whether Rivera had the ability to perform the essential functions of the job.

A medical supply technician's official duties include: collecting used medical equipment; decontaminating, sterilizing and maintaining medical equipment; preparing trays of medical instruments for various wards in the hospital; filling medical personnel's requests for medical items; wrapping instruments and medical supplies; and stocking medical supply closets. The VA contends these duties are the essential functions of a medical supply technician and courts are hesitant to second-guess an employer's understanding of its jobs. *Id.* at 928. Rivera claims he could have worked forty hours per week answering telephones, wrapping instruments, folding towels, inputting data into a computer, and entering information regarding supplies into a logbook. He also claims that Dolly Booth, an SPD employee, did not perform any heavy lifting. The fact that some employees did not perform a function does not make that function non-essential. *See Winfrey*, 259 F.3d at 616. Moreover, an essential function need not encompass a significant quantity of the employee's time. *Basith*, 241 F.3d at 929. Rivera has not offered evidence to show that the VA's understanding of the essential functions of a medical supply technician is incorrect. Thus, Rivera

11

has not overcome the deference courts award employers. *Id.* at 928.

This case is analogous to *Basith v. Cook County*, 241 F.3d 919 (7th Cir. 2001). In *Basith*, the plaintiff was a pharmacy technician who had injured his right leg in a car accident. The plaintiff's physician advised him not to lift more than ten pounds and to avoid standing for more than ten minutes at a time. The essential functions of a pharmacy technician included stocking medications and delivering medication to patients. The plaintiff argued that other hospital employees could have assisted him with these duties. The court rejected his argument, stating that he was in effect asking for someone else to perform his duties. The court refused to require the hospital to restructure the plaintiff's job or the job of other employees to accommodate the plaintiff's disability. The court concluded that the plaintiff was not a qualified individual with a disability because he could not perform the essential functions of his job. Thus, the court did not need to decide whether the plaintiff was denied reasonable accommodation. *Id.* at 929-32.

Rivera's partial disability severely limits his ability to walk or lift heavy objects. Because of his disability, his physician advised him not to lift more than ten pounds and to take a sedentary job. Among the essential functions of a medical supply technician are lifting and transporting heavy supplies. This entails lifting supplies from a pallet to a supply cart, and then from the supply cart to the shelf. Transporting supplies sometimes entails pushing a cart that weighs several hundred pounds. In order to accommodate Rivera, he would need assistance whenever he engaged in any of these activities if the weight exceeded ten pounds. In effect, just as the plaintiff in *Basith*, Rivera implicitly wants the VA to assign someone else to assist him in performing the essential functions of his job. Rivera also claims the VA could have accommodated him by allowing him to perform exclusively sedentary functions like answering the telephones and entering data into computers.

However, the VA, like the hospital in *Basith,* was not required to restructure Rivera's position or the position of other employees in order to accommodate his disability. *Id.* at 929; *Hansen v. Henderson,* 233 F.3d 521, 523 (7th Cir. 2000) (employers are not required to manufacture a job that will enable a disabled worker to work despite his disability). Rivera was not a qualified individual with a disability because he could not perform the essential functions of his job. Accordingly, summary judgment must be granted on Rivera's disability discrimination claim.

## IV. Retaliation Claims

### A. Failure to Promote

Rivera claims the VA retaliated against him for filing his EEOC complaint by not promoting him to the GS-7 position. To establish a *prima facie* case for failure to promote, Rivera must show: (1) he is a member of a protect group; (2) he applied for and was qualified for the position; (3) he was rejected for the position; and (4) those who were promoted had similar or lesser qualifications for the position. *Pafford,* 148 F.3d at 669. Rivera cannot show that he was qualified for the position. One of the qualifications required for the GS-7 position was service at the GS-6 level for at least one year. At the time he applied, Rivera was only a GS-5. Thus, because Rivera was not qualified, his claim fails. *Id.* Accordingly, summary judgment must be granted on Rivera's retaliation claim.

### B. Removal from the Special Emphasis Program

Rivera's final claim is that he was removed from his position as Hispanic Manager of the Special Emphasis Program in retaliation for filing his EEOC complaint. To make out his retaliation claim, Rivera must show: (1) he engaged in statutorily protected expression, *i.e.,* reporting conduct prohibited by Title VII; (2) he suffered an adverse employment action; and (3) there is a causal link between his protected conduct and the adverse employment action. *Id.* at 670. The *McDonnell*

13

*Douglas* burden-shifting framework applies to retaliation claims. *Id.*

Rivera's claim fails because he cannot show a causal link between the filing of his EEOC complaint and his removal from the Special Emphasis Program. Richard Citron removed Rivera from the position because he believed Rivera was not following proper administrative procedures and Rivera lacked the communication skills that were essential to the job. In addition, Citron received complaints that Rivera was not adequately performing his regular job duties, which was required in order to act as Hispanic Manager. Based on these complaints and Citron's dissatisfaction with Rivera's performance, Citron removed Rivera from the program. Rivera presents no evidence establishing the necessary link between his EEOC complaint and his removal. Conclusory allegations, not supported by the record, are insufficient to defeat summary judgment. See *Haywood v. North Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997). Thus, Rivera fails to establish a *prima facie* case.

Alternatively, even if Rivera could establish a *prima facie* case, he does not present sufficient evidence to rebut the VA's legitimate reason for his removal. Rivera attests he was an effective manager and that he performed all of his regular job duties. He also submits the affidavit of a former co-worker who observed him perform effectively as Hispanic Manager. Ali Aff., ¶ 6. However, whether or not Citron's assessment of Rivera's job performance as Hispanic Manager or as supply technician were accurate does not establish that his legitimate reasons for removing him were pretextual. Thus, no inference of discriminatory motive can be drawn. *Olsen*, 2001 WL 1117297, at *4. Accordingly, summary judgment must be granted on Rivera's retaliation claim.

## CONCLUSION

The motion for summary judgment is granted.

October 15, 2001

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge